IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| VANESTSA B.-L.,[1] | No. 2:20-cv-1335-MO |
| Plaintiff, | OPINION & ORDER |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

MOSMAN, District Judge:

This matter comes before me on Plaintiff Vanessa B-L.'s Complaint [ECF 1] against Defendant Commissioner of the Social Security Administration. For the reasons given below, I REVERSE the Commissioner's decision and REMAND this case for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION & ORDER

## PROCEDURAL BACKGROUND

In October, 2016, Plaintiff applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act, alleging disability beginning on July 1, 2012. Tr. 15, 178-79, 180-85. The Disability Determination Services for the Oregon Department of Human Services (Oregon DDS) denied both applications on January 9, 2017. Tr. 15, 105-113. Plaintiff timely requested reconsideration of the initial determinations on February 3, 2017. Tr. 114-115. Oregon DDS denied both DIB and SSI on reconsideration, issuing both decisions April 28, 2017. Tr. 15, 117-121. Plaintiff appeared before Administrative Law Judge ("ALJ") R.J. Payne on May 30, 2019. Tr. 30-50. On June 19, 2019, the ALJ issued a decision denying Plaintiff's claims for benefits. Tr. 12-28. Plaintiff filed an appeal, and the Appeals Council denied review. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 1, 2012. Tr. 17. At step two, the ALJ determined that Plaintiff had a single severe impairment: bipolar I disorder. Tr. 18. But, the ALJ found that Plaintiff's impairment did not meet the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. Tr. 18. The ALJ further found the claimant does not have an impairment or combination of impairments that has significantly limited ( or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments. Tr. 18. The ALJ therefore found Plaintiff not disabled. Tr. 18.

**LEGAL STANDARD**

Courts must uphold the ALJ's decision if it "was supported by substantial evidence and based on proper legal standards." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). When "evidence is susceptible of more than one rational interpretation ... the ALJ's conclusion ... must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Errors in the ALJ's decision do not warrant reversal if they are harmless. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

**DISCUSSION**

Plaintiff raises three primary issues with the ALJ's decision. First, he contends that the ALJ improperly weighed the medical evidence, specifically the opinion of Dr. Terrel Templeman. Second, Plaintiff argues that the ALJ failed to consider all of Plaintiff's impairments at step two. And third, Plaintiff argues the ALJ erred by finding Plaintiff's bipolar I impairment was not severe. I address each issue in turn.

**I.    Medical Opinion Evidence**

Plaintiff argues the ALJ erred by rejecting treating doctor Terrel Templeman, PhD's diagnoses of Plaintiff's limitations without specific and legitimate reasons for doing so. Plaintiff also argues the ALJ mistakenly credited Dr. Valette's opinions, which were contradicted throughout by the two other non-examining psychologists in the record. "Medical opinions are statements from acceptable medical sources that reflect judgements about the nature and severity of [claimants'] impairment(s), including [their] symptoms, diagnosis and prognosis, what [they] can still do despite impairment(s), and [their] physical or mental restrictions." 20 C.F.R. §§

404.1527(a)(1), 416.927(a)(1). Regardless of its source, the ALJ is required to consider and explain the weight afforded to every medical opinion in the record using certain factors, such as the amount of relevant evidence that supports the opinion, the quality of the doctor's explanation, the consistency between the opinion and the medical record as a whole, and the doctor's familiarity with the record as a whole. *Id.* §§ 404.1527(c), 416.927(c). After applying the appropriate factors, the ALJ may reject the medical opinion of an examining doctor by providing specific and legitimate reasons that are supported by substantial evidence," *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017), and may reject the opinion of a non-examining doctor only "by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

    A.    *Dr. Templeman*

On September 26, 2016, Dr. Terrel L. Templeman, Ph.D. conducted a comprehensive evaluation to assess Plaintiff's "state of mind on June 4, 2016" in association with then-pending felony charges that had allegedly taken place on that date Tr. 303. Dr. Templeman conducted a psychodiagnostic interview and administered several tests to assess Plaintiff's intellectual functioning, practical and commonsense reasoning, executive functioning, impulse control, attention and concentration. Tr. 303, 313, 314. Dr. Templeman also screened for current psychiatric disorders and for neuropsychological problems, as Plaintiff "reported early spinal meningitis, high fevers and head injuries dating back to childhood." Tr. 313, 314. He interviewed Plaintiff's mother and Plaintiff's husband and reviewed Plaintiff's medical and law enforcement records. Tr. 303. Dr. Templeman diagnosed Plaintiff with the following conditions: History of Bipolar I Disorder with Psychotic Features, Borderline Personality Disorder, History of Alcohol Use Disorder Currently in Remission, History of Amphetamine Disorder, Suspected Mild

Neurocognitive Disorder Due to Traumatic Brain Injury with Behavioral Disturbance and History of Physical Abuse and Sexual Abuse by Non-partner. Tr. 314.

Dr. Templeman gave these diagnoses in the limited context of his purpose to assess Plaintiff's state of mind on June 4, 2016. Tr. 303. He opined that "at the time of events on June 4, 2016, [Plaintiff] had not taken her medication for [bipolar disorder] for some time." Tr. 315. He further opined that Plaintiff's actions likely occurred because of her delusional belief that she and her children were in danger and that they likely occurred too quickly for Plaintiff to consider their criminality. Tr. 316. In addition, Dr. Templeman found it unlikely that Plaintiff was under the influence of psycho-mimetic drugs at the time of her June 4, 2016, arrest. Tr. 317. The ALJ assigned Dr. Templeman's opinion "no weight" because it was confined to the context of her mental state on June 4, 2016, and did not speak to her inability to perform "basic work activity for 12 months or more." Tr. 21. The ALJ also noted that Dr. Templeman's "opinions merit little weight in the context of eligibility for Social Security benefits, as the claimant's capacity to understand criminal conduct is unrelated to the capacity for basic work activity." Tr. 21.

The narrow context of Dr. Templeman's opinion was a specific and legitimate reason for the ALJ to assign his opinion little weight. An ALJ may reject opinions that concerns functioning over a temporary period. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). Here, Dr. Templeman assessed Plaintiff's state of mind on a single day, June 4, 2016. Tr. 315-16. 16. The ALJ considered Dr. Templeman's medical findings underlying his assessment of Plaintiff's state of mind, and found they were not a reliable indicator of Plaintiff's functioning during the relevant period, as they occurred only a few months after Plaintiff's June 2016 manic episode. Tr. 23, 40. Such an opinion has little relevance for the purposes of eligibility for disability benefits, where a claimant must show that her impairments preclude basic work

activity for twelve months or longer. Tr. 21; *see* 20 C.F.R. §§ 404.1509, 416.909. Dr. Templeman's discussion of Plaintiff's symptoms that led to such a diagnosis does not negate (or contradict) this reasonable finding, particularly when Dr. Templeton reviewed medical records from 2008-2009, well before the alleged onset date. Tr. 305-06. In sum, the ALJ reasonably found Dr. Templeman's opinion unpersuasive because it was limited in scope, and did not speak to the relevant question of whether Plaintiff was disabled for twelve months or more following her alleged onset date.

  B. *Dr. Valette*

At the hearing, the ALJ elicited testimony of medical expert Colette Valette, PhD, for a medical opinion on the claimant's functional capacity. Dr. Valette opined that that Plaintiff had a medically determinable impairment of bipolar disorder. Tr. 34. She opined that Plaintiff would have no mental limitations in her ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt and manage herself. Tr. 34-36. Dr. Valette explained that treatment providers observed normal thought processes, thought content, and cognition with average memory functioning. Tr. 35. While Plaintiff presented with poor attention during her September 2016 psychological evaluation with Dr. Templeton, Plaintiff's treatment providers did not report any difficulties with attention. Tr. 35-36, 313-14. And with the exception of Plaintiff's manic episode in June 2016, the record showed normal interaction with others. Tr. 35-36. In addition, Plaintiff's mental health was stable following her June 2016 manic episode, indicating that Plaintiff did not have difficulties adapting and managing herself. Tr. 36. The ALJ gave great weight to Dr. Valette's opinion, found that Plaintiff had no more than a mild limitation in any of the functional areas and found therefore that Plaintiff did not have a severe impairment. Tr. 18, 22.

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for crediting Dr. Valette's opinion over Dr. Templeman's, and by failing to resolve conflicts between Dr. Valette's opinion, and the opinions of the two other non-examining psychologists who evaluated Plaintiff's claims at the application and reconsideration stages. If another doctor's opinion contradicts the treating doctor's opinion, as here, the Commissioner may reject this opinion for "specific and legitimate reasons." *Lester v. Chater*, 81 F.3d 830–31 (9th Cir.1995). When there is conflicting evidence, the Commissioner must determine credibility and resolve the conflict. *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir.2002)(internal quotation omitted). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The trier of fact must resolve conflicts in the evidence and, if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992).

The ALJ here met this burden when explaining why she credited Dr. Valette over Dr. Templeman, and substantial evidence supported the decision to do so. In the opinion, the ALJ found Dr. Templeman evaluated Plaintiff a few months after her June 2016 manic episode and that the record as a whole did not bear out his assessed limitations. Tr. 23, 40. In contrast, the ALJ noted that, as Dr. Valette opined, Plaintiff's mental status examinations over the longitudinal period showed "totally normal" cognitive functioning. Tr. 40. The ALJ reasonably relied on Dr. Valette's "thorough explanation of her ratings" of Plaintiff's mental status, which included review of Plaintiff's benign mental status examinations, Plaintiff's ability to adapt and manage herself overall stable mental health following her June 2016 manic episode, and Plaintiff's ability to taper off her psychiatric medication in preparation for a pregnancy. Tr. 36. In

all, the ALJ sufficiently reviewed the evidence, summarized the medical opinions and relevant conflicts, and reasonably concluded that the medical record as a whole supported Dr. Valette's opinion over Dr. Templeman's. Tr. 22-23; see 20 C.F.R. §§ 404.1527, 416.927. The Court finds substantial evidence supported the ALJ's decision to assign "great weight" to Dr. Valette's opinion, and that the ALJ met his burden to provide "specific and legitimate" reasons for crediting that opinion over Dr. Templeman's.

The ALJ erred, however, in failing to resolve other conflicts between Dr. Valette's opinion and the medical record. As noted above, the ALJ s required to consider all medical opinion evidence and is responsible for resolving conflicts and ambiguities in the medical testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Dr. Valette testified that Plaintiff had no limitation in any of the four broad areas of mental functioning. Tr. 38. But Dr. Ben Kessler, Psy.D., found moderate functional limitations in social functioning and maintaining concentration, persistence or pace. Tr. 69. At the reconsideration stage, Dr. Sergiy Barsukov, Psy.D, found moderate limitations in all four functional areas listed in 20 C.F.R. § 404.1520a(b)(3) and 20 C.F.R. § 416.920a(c)(3). Tr. 85. These two medical opinions directly conflict with Dr. Valette's opinion that Plaintiff had no limitation in these Category B areas, and the ALJ relied primarily on Dr. Valette's opinion to decide that Plaintiff was not disabled because she had "no more than 'mild' limitation in any of the [four] functional areas." Tr. 22. Failure to resolve this conflict was error, harmful because the conflicting medical opinions directly undermine Dr. Valette's and the ALJ's conclusion that Plaintiff did not have limitations amounting to a severe impairment. On remand, the ALJ must consider these conflicting medical opinions, and reconcile them with Dr. Valette's.

## II.   Plaintiff's Alleged Additional Impairments

Plaintiff argues that the ALJ erred by failing to find whether an alleged neurocognitive disorder was medically determinable when Dr. Templeman assessed "suspected mild neurocognitive disorder due to traumatic brain injury with behavioral disturbance." ECF No. 30 at 15, citing Tr. 314. Dr. Templeman "noted a head injury at age [four] when [Plaintiff] fell out of her father's car and broke her front teeth." Tr. 308. And, during the subsequent hospitalization, Dr. Templeman noted that Plaintiff was diagnosed with Spinal Meningitis and incurred a high fever. Tr. 308. The ALJ did not consider Dr. Templeman's speculation that Plaintiff may have a neurocognitive disorder at the hearing or in the written decision. *See* Tr. 12-28, 30-50.

The ALJ did not err by failing to consider Dr. Templeman's notation that Plaintiff had a "suspected mild neurocognitive disorder" because Plaintiff did not allege disability on this basis, and failed to raise the issue at the hearing. An ALJ's duty to consider evidence of disability is confined to the alleged bases of disability in a claimant's application. 20 C.F.R. §§ 404.1512(d), 416.912(d). Furthermore, when represented by counsel, claimants "must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111 (9th Cir. 1999). In this case, Plaintiff did not allege disability based on a neurocognitive disorder. Tr. 203. Nor did Plaintiff argue that she had a neurocognitive disorder at any point during the administrative process, or before the ALJ at the administrative hearing. Tr. 30-50, 114-15, 123-25. Plaintiff does not dispute her failure to raise these issues below in her Reply Brief. *See* Pl. Reply. ECF No. 38. Because Plaintiff failed to raise this issue in her disability paperwork, or at any time in the administrative process until now, she has forfeited it.

The Court therefore finds the ALJ did not err by failing to consider whether Plaintiff suffered from a neurocognitive disorder.

## III.     Step Two Determination

Lastly, Plaintiff argues that the ALJ's finding that claimant had no more than a mild limitation in the functional areas of understand, remember, or apply information; concentrate, persist, or maintain pace; and adapt or manage oneself is not supported by substantial evidence. Tr. 22; 20 C.F.R. §§ 404.1520a(b)(3), 416.920(b)(3). At step two of the sequential evaluation, the claimant has the burden to show that she has a severe medically determinable impairment that can be expected to result in death or last for a continuous period of at least twelve months. *Celava v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An ALJ will find that a claimant has a medically determinable impairment only if the record includes "medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1521, 416.921. Further, an ALJ will find an impairment to be "severe" only if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work ." *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir.1996) (internal quotation marks and citations omitted). "Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims, 'and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart,* 433 F.3d 683, 687 (9th Cir.2005) (quoting *Smolen,* 80 F.3d at 1290 and S.S.R. 85–28).

Where a claimant makes a claim for a mental impairment, like bipolar disorder, an ALJ is required to make use of the "special psychiatric review technique." 20 C.F.R. § 404.1520a. An ALJ must determine whether the claimant had a medically determinable mental impairment, rate the degree of functional limitation for four functional areas, determine the severity of the mental impairment (in part based on the degree of functional limitation), and then, if the impairment is severe, proceed to step three of the disability analysis to determine if the impairment meets or equals a specific listed mental disorder. 20 C.F.R. §§ 404.1529a(b) & (c). The four functional areas the ALJ must assess are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The Psychiatric Review Technique Form ("PRTF") is typically used to comply with the regulation, *Gutierrez v. Apfel*, 199 F,3d 1048,1050 (9th Cir. 2000) *superseded by regulations on other grounds*, 20 C.F.R. § 404.1520a (2001). And SSR 85-28 sets up a "tie goes to the claimant" standard of review, placing only a modest burden on the claimant at step two:

> Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued. In such a circumstance, if the impairment does not meet or equal the severity level of the relevant medical listing, sequential evaluation requires that the adjudicator evaluate the individual's ability to do past work, or to do other work based on the consideration of age, education, and prior work experience.

SSR 85-28, available at 1985 WL 56856 at *3.

Because the ALJ failed to adequately assess the full spectrum of the medical record, he failed to show Plaintiff failed to meet her burden at Step Two. The Ninth Circuit has clarified that claimants face a low bar at Step Two, which is only a "de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An ALJ

may find that a claimant lacks a medically severe impairment or combination of impairments "only when his conclusion is 'clearly established by medical evidence.'" *Webb*, 433 F.3d at 687 (quoting S.S.R. 85-28). Included in "medical evidence" is "medical opinion evidence," which are "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). As described above, the ALJ neglected to consider two such medical opinions from Drs. Kessler and Barsukov. *See* Tr. 18-23. Both doctors found Plaintiff's functional limitations were more than "mild" in the relevant categories, which directly undermines the ALJ's finding that Plaintiff's bipolar I disorder was not severe. *See* Tr. 69, 85. It was therefore error for the ALJ to conclude that Plaintiff's "mental impairment causes no more than 'mild' limitation in any of the functional areas" without addressing medical evidence that pointed the other way.

Without analyzing the medical opinions of Dr. Kessler or Barsukov, the record does not demonstrate the "total absence of evidence" of a severe, medical impairment, and the ALJ should have "continued the sequential analysis beyond step two." *Webb*, 433 F.3d at 688. As such, on remand further administrative proceedings are necessary for the ALJ to either analyze the contrary medical evidence and explain why it is unpersuasive, or to proceed beyond Step Two. *Harman v. Apfel*, 211 F.3d 1172,1178 (9th Cir.), *cert, denied*, 531 U.S. 1038 (2000).

## CONCLUSION

For the reasons given above, I REVERSE the Commissioner's decision and REMAND this case for further proceedings in line with this Opinion.

IT IS SO ORDERED.

DATED:      8/8/2023              .

*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge